On respondent's petition for reconsideration filed September 21, and response to petition for reconsideration filed October 5, reconsideration allowed, former opinion (280 Or App 733, 380 P3d 1176) modified and adhered to as modified December 29, 2016; petition for review denied June 29, 2017 (361 Or 645)

In the Matter of the Marriage of

Julie A. HAGGERTY,
nka Julie Ann Blair,
*Petitioner-Respondent,*
*and*

Ancer L. HAGGERTY,
*Respondent-Appellant.*

Multnomah County Circuit Court
100463778; A157822

391 P3d 982

Phillip F. Schuster, II, for petition.

W. Michael Gillette, Leora Coleman-Fire, and Schwabe, Williamson & Wyatt, P.C., for response.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**DEVORE, J.**

Wife petitions for reconsideration of our decision reversing and remanding a supplemental judgment for spousal support. We allow reconsideration, modify our opinion, and adhere to the opinion as modified.

Wife contends that, contrary to our recent opinion, a settlement agreement for support at $4,000 per month could not be within the range of settlements that are just and equitable under the circumstances. She contends that such support would fail to meet her financial needs. She contends that, in our recent opinion, we failed to consider tax consequences and erred when recounting in a footnote that:

> "Wife's expert prepared tax consequence calculations assuming that wife's income would include $7,000 in monthly spousal support payments. The expert did not prepare any calculations based on an award of $4,000, *nor was that evidence otherwise introduced at the hearing.* On appeal, wife attempts to develop an argument, based on an award of $4,000 and contending that she will suffer a financial deficit after tax liability is taken into account. That evidence, however, is not in the record, and an expert would have been required to make those calculations."

*Haggerty and Haggerty*, 280 Or App 733, 742 n 8, 380 P3d 1176 (2016) (*Haggerty II*) (emphasis added). We agree that wife's expert did testify to tax consequences assuming spousal support of $4,000. We modify our opinion by striking the footnote.

Later in the opinion, we stated, "The spousal support award, combined with wife's other income, would exceed her declared monthly financial need." *Id.* at 750. We strike that statement. A more complete statement is that spousal support of $4,000, when combined with wife's income and income potential, would exceed her declared monthly financial need.

To be precise, wife's expert did not testify to income available to wife. Indeed, her expert cautioned, after calculating wife's taxes, "This doesn't give you cash flow[.]" "Cash flow" or, in a larger sense, income potential, became a matter that was addressed in arguments of husband and wife in light of other circumstances.

Husband has argued that wife's calculations omit any income from Social Security benefits, although she was within only a year of an early receipt of benefits. As is her right, wife preferred to delay receiving Social Security retirement benefits. Yet, assuming wife's tax calculation, existing PERS benefits, and $4,000 in spousal support, her alleged, marginal shortfall, after taxes, would disappear with receipt of any Social Security benefits, whether early, normal, or delayed.[1]

Regardless whether wife delays Social Security benefits, her argument that tax consequences leave her short also assumes that the court should ignore her present ability to earn an income in the meantime. Without any reduction of PERS benefits, she is allowed to supplement her PERS benefits up to a potential of "somewhere less than $20,000" annually. She testified that, compelled by necessity, she had done some substitute teaching in 2009, had declined requests to teach in 2010 due to her husband's health, and had done some substitute teaching in 2011, the year of her trial testimony. Wife's shortfall argument does not recognize or calculate her potential, as a master-teacher and former principal, to work as a substitute teacher at least some days per month while delaying Social Security.

More importantly, her shortfall argument is premised upon an assumption that the putative settlement agreement could not be within the range of a just and equitable settlement. Her argument assumes that a court would not permit an agreement by which a person would choose to receive lesser support in exchange for disproportionately greater, immediate assets. Put another way, her argument assumes that a person could not reasonably choose to receive less support that is dependent upon the uncertain longevity of an older payor-spouse and to receive the certainty of disproportionately greater assets with which to meet a margin of her support needs.

---

[1] At the time of the putative settlement, wife had not quite reached the early retirement age of 62, at which time she could receive $1,177 monthly. At the time of this reconsideration, she has passed the ordinary retirement age of 66, at which time she could receive $1,561 monthly. If she prefers to wait until age 70, wife would receive $2,061 monthly in Social Security benefits.

It is well-established that property division and support are related. *See, e.g., English and English*, 223 Or App 196, 211, 194 P3d 887 (2008) (equal division of property affects the amount of compensatory spousal support but does not eliminate the need for support). "Spousal support payments are not to be viewed in isolation but must be considered in light of the other provisions of the dissolution decree, especially the property division and child support." *Frishkoff and Frishkoff*, 45 Or App 1033, 1045, 610 P2d 831 (1980). Some time ago, the Supreme Court observed that spousal support "cannot adequately be considered except in light of the provisions in the dissolution decree for division of property and child support." *Grove and Grove*, 280 Or 341, 344, 571 P2d 477, *adh'd to as modified on recons*, 280 Or 769, 572 P2d 1320 (1977); *see also* ORS 107.105(1)(d)(C)(xi) (as to maintenance support, consideration of "[a]ny other factors the court deems just and equitable"). We continue to observe that, in assessing the need for spousal support, all the financial provisions of the judgment must be considered. *Gillis and Gillis*, 234 Or App 50, 58, 227 P3d 809 (2010) (citing *Smith and Smith*, 168 Or App 349, 7 P3d 559 (2000)).

In this case, the property division leaves wife with $1,202,195 in assets, representing roughly 60 percent of the parties' property, or $423,947 more than husband. *Haggerty II*, 280 Or App at 742, 750. Consequently, we adhere to our conclusion that the alleged settlement agreement would be within the range of what would be just and equitable under the circumstances. *See Bailey and Bailey*, 248 Or App 271, 277, 273 P3d 263 (2012) (where husband's monthly taxable income was $35,200, wife's support, after transition, was $4,000 per month); *see also Gillis*, 234 Or App at 58-59 (where husband's income was $17,083 monthly, this court awarded three years $5,000 monthly combined transitional and maintenance support, followed by five years of monthly $4,000 maintenance support, ending when retirement accounts could be available without penalty).

Wife also contends that we erred when relying on the trial court's statements that expressed that court's standard for evaluating whether wife had accepted the settlement proposal. Wife contends that this court should disregard

the trial court's "antecedent remarks" and rely only on the trial court's ultimate conclusion that no agreement had been "effectuated." Wife's argument proves too much. Although a trial court's antecedent remarks, not embodied in a final judgment, cannot be used to impeach the judgment, *Sause Bros. Ocean Tow v. Gunderson*, 265 Or 568, 576, 510 P2d 541 (1973), a trial court's remarks during a proceeding may help an appellate court to determine whether the trial court applied an incorrect principle of law. *See, e.g., Maxfield v. Nooth*, 278 Or App 684, 687, 377 P3d 650 (2016) (reversing and remanding where post-conviction court applied the incorrect legal standard—as evidenced by "the post-conviction court's statements on the record" and quoting the court's "explanation of its ruling"); *State v. Brown*, 263 Or App 263, 264, 328 P3d 699, *rev den*, 356 Or 163 (2014) ("the record suggests that the trial court applied an incorrect legal standard when it denied defendant's motion to dismiss"); *Harris v. Pameco Corp.*, 170 Or App 164, 176, 12 P3d 524 (2000) (considering the trial court record and declaring that we were "not persuaded by the trial court's analysis"); *State v. Olson*, 79 Or App 302, 304, 719 P2d 55 (1986) (reversing where the trial court apparently applied the incorrect legal standard to the defendant's defense).

In this case, the trial court's so-called antecedent remarks were not a prior inconsistent ruling, nor did they contravene anything in the judgment. Rather, the record reflects that the trial court's expression of a subjective standard of assent represented what the court described as its "formal findings." Contrary to wife's argument, our opinion did not depart from established case law. Our opinion adhered to the rules that we review the record for legal error and that the question of agreement is tested by an objective standard of assent. *Haggerty II*, 280 Or App at 747.

Finally, wife contends that the court erred in its disposition and that clarification is required. Although she had not requested it before, she now requests that this court set a sum of spousal support during the interim before the trial court's further proceedings. Husband responds that he is voluntarily paying wife's requested sum. In any event, such a request is a matter for the trial court, not this court and not on a petition for reconsideration. *See* ORS 107.105(4)

(support during pendency of appeal); ORS 107.095 (provisions of judgment).

We have considered wife's other arguments and reject them without discussion. With the modification here, we adhere to our prior decision.

Reconsideration allowed; former opinion modified and adhered to as modified.